# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **KIMBERLY YVETTE NANCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **4:17-cv-00378-AKK** |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Kimberly Yvette Nance brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Nance worked as a certified nursing assistant for more than fifteen years until she stopped working in 2013 at age 41 due to her alleged disability. Doc. 7-3 at 62, 71. Nance filed her application for Title II Disability Insurance Benefits on October 7, 2013, asserting that she suffered from a disability, beginning September

17, 2013, caused by a failed lumbar disc repair and several other disabling impairments, including osteoarthritis, fibromyalgia, and depression. Docs. 7-3 at 34; 7-4 at 2-4, 7; 7-6 at 2. The SSA denied Nance's application, doc. 7-5 at 4, and, shortly thereafter, Nance requested a formal hearing before an ALJ, *id.* at 10.

At the hearing held on April 7, 2015, Nance was represented by a non-attorney. Doc. 7-3 at 34, 58. The ALJ subsequently entered a decision finding that Nance was not disabled. *Id.* at 31, 49–50. Nance obtained new representation and appealed. *Id.* at 28–29. The SSA Appeals Council summarily affirmed the ALJ's decision denying disability benefits, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 2. Having exhausted her administrative remedies, Nance filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

## III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that she is disabled, and, "consequently [s]he is responsible for producing evidence in support of he[r] claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## IV. The ALJ's Decision

In performing the five-step analysis, the ALJ first determined that Nance met the insured status requirements of the Social Security Act through December 31, 2017, and that she had not engaged in "substantial gainful activity since September 17, 2013, the alleged onset date" of her disability. Doc. 7-3 at 35. Accordingly, the ALJ proceeded to Step Two of the analysis, finding that Nance had the following severe impairments: "obesity, lumbar degenerative disc disease, osteoarthritis, and depression." *Id.* at 37. The ALJ also identified numerous non-severe impairments including: "hypothyroidism, gastroenteritis, vitamin D deficiency, left ankle/foot sprain, upper respiratory infection, bursitis, mitral valve prolapse, and hematuria." *Id.* Significantly, the ALJ concluded that Nance had failed to establish her history of fibromyalgia as a medically determinable

impairment. *Id.* at 39. In any event, because he found that three of Nance's impairments are severe, *id.* at 37, the ALJ proceeded to Step Three of the analysis and found that none of Nance's impairments, considered singly or in combination, met or "medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." *Id.* at 39.

Next, the ALJ determined Nance's residual functional capacity ("RFC"), finding that:

> [Nance] has the [RFC] to perform light work as defined in 20 CFR § 404.1567(b) except [she], as part of a job requirement, should not climb ladders, ropes, scaffolds, nor perform around work hazards. [Nance] could occasionally climb ramps or stairs, kneel or crawl; and [she] could frequently stoop or crouch. Additionally, [Nance] could understand and remember simple instructions and carry out those instructions and sustain attention to routine tasks for extended periods. [Nance] cold tolerate ordinary work pressure, but should avoid quick decision-making, rapid changes and multiple demands. [Nance] would benefit from regular rest breaks and a slowed pace but can maintain a work pace consistent with the mental demands of competitive level work. Contact with the public should be no more than occasional. [Nance] can accept supportive feedback and can adopt to infrequent, well-explained changes in the work requirements or work process.

Doc. 7-3 at 42. Based on this RFC, and relying on the testimony of a vocational expert ("VE"), at Step Four, the ALJ found that Nance could not return to her past relevant work as a certified nursing assistant. *Id.* at 48. The ALJ then proceeded to Step Five of the disability analysis, where, based on Nance's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that "there are jobs

that exist in significant numbers in the national economy that [Nance] can perform," including laundry worker and marker.  *Id.* at 48-49.  Alternatively, the ALJ determined that if Nance's RFC is reduced to a sedentary level, there are still jobs that exist in the national economy that she could perform, including as a surveillance system monitor, and machine operator feeder.  *Id.* at 49.  As a result, the ALJ concluded that Nance was not disabled on September 17, 2013 through August 18, 2015, the date of his decision.  *Id.* at 49-50.

## V. Analysis

On appeal, Nance objects to the ALJ's decision on several grounds.  First, Nance argues that the ALJ improperly discounted her reports of disabling pain.  Second, she contends that the ALJ did not afford proper weight to the opinion evidence submitted by Dr. Anthony Sims, a treating physician.  Third, Nance asserts that the ALJ erred by finding that her impairments did not medically equal or exceed a listed impairment, specifically Listing 1.04A dealing with disorders of the spine.  Fourth, Nance claims the ALJ's determination of her RFC and the ALJ's decision were not supported by substantial evidence.  Finally, Nance argues that the AC did not properly review new evidentiary submissions submitted on appeal and chronologically related to the evidentiary record before the ALJ.  The court addresses each of Nance's contentions in turn.

A.    Whether the ALJ Erred by Finding Nance's Pain Testimony was not Credible

Nance argues that the ALJ erred by rejecting her subjective complaints of pain.  Doc. 12 at 50-55. When, as here, the plaintiff alleges disability because of pain, she must present "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).  Thus, a plaintiff's "subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability."  *Id.* (citations omitted).  However, an ALJ may properly discredit a claimant's subjective testimony if the ALJ clearly articulates his reason for doing so and substantial evidence supports the ALJ's finding.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

At the administrative hearing in this matter, Nance testified that she stopped working on September 17, 2013 due to constant pain.  Doc. 7-3 at 62.  Nance further testified that she has difficulty sitting and has to "move around constantly" and that she can only stand or walk for about five minutes at a time.  *Id.* at 75. According to Nance, her back surgeon, Dr. Franklin Sammons, told her that her pain is intractable, and he does not want her "bending, twisting, [or] lifting" more

than five pounds. *Id.* at 61, 73. Nance appeared at the hearing wearing a back brace, and she testified that she had used the brace since her back surgery on November 7, 2014 and may have to use it for up to one year because her back was not healing correctly. *Id.* at 61. Nance added also that she suffers from depression and anxiety due to her pain and impairments. *Id.* at 62, 74. The ALJ considered Nance's subjective complaints of pain, and, applying the correct standard, determined that Nance's "medically determinable impairments could reasonably be expected to cause some functional limitations; however, [Nance's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." *Id.* at 43.[1]

A review of the record shows that the ALJ adequately articulated his reasons for rejecting Nance's pain testimony and that his decision was supported by substantial evidence. Specifically, the ALJ extensively reviewed the medical records and explained why Nance's subjective reports of pain were not consistent with the medical records. *Id.* at 43-46.

---

[1] On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the ruling concerning subjective complaints about pain that was in effect when the ALJ issued a decision in this case. Soc. Sec. Ruling 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *1. SSR 16-3p eliminates the term "credibility" from social security policy but does not change the factors that an ALJ should consider when examining subjective pain testimony. *See id.*, at *2-3. Moreover, SSR 16-3p does not apply retroactively, *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017), and when a federal court reviews a final decision in a claim for DIB, the court reviews the decision using the rules that were in effect at the time of the decision. SSR 16-3p, 2017 WL 5180304, at *1.

First, as noted by the ALJ, Nance's self-reports to her medical providers about her back pain varied and were often more consistent with moderate, rather than disabling, levels of discomfort. Docs. 7-3 at 46-47; 7-11 at 39; 7-14 at 9, 75, 79. Moreover, Nance's subjective complaints were not consistent with objective evidence in the record, including that Nance had a normal gait, normal strength, and generally normal range of motion upon examination, with, at most, only a moderate decrease in range of motion in certain areas. Docs. 7-3 at 46-47; 7-11 at 10, 16, 37, 39-40, 49, 81, 85, 90, 108; 7-2 at 15; 7-14 at 7, 9-10, 44, 75, 79. Although, as Nance testified, Dr. Sammons diagnosed her with "intractable back pain," he made that diagnosis prior to Nance's lumbar fusion surgery. Doc. 7-12 at 46. After the surgery, Nance complained of continuing and increasing back pain, but post-surgery imaging revealed that the hardware for her lumbar fusion was in good position, her spine had normal alignment, her spinal canal was well-maintained, and, although she had "a vertebral body hemangioma at the L2 level," she had no significant disc abnormalities. Doc. 7-14 at 48-50. That the surgery proved successful is evident in the fact that several months afterwards, Nance reported to Dr. Sims, her primary care physician, that her back pain improved with anti-inflammatory use. *Id.* at 75, 79.

Second, with respect to her depression, the ALJ noted Nance had never seen a mental health specialist, and her medical history did not reveal any serious

cognitive symptoms and reflects that her symptoms were well-controlled with medication.  *See* docs. 7-3 at 62; 7-11 at 36-44.

Additionally, the ALJ noted that Nance had reported experiencing significant improvement with conservative therapy.  Doc. 7-3 at 45.  Indeed, Nance reported that she experienced a significant improvement with a selective nerve root block ("SNRB"), and in particular that "she [was] 90% improved" after her first SNRB in May 2013, though she did not experience relief after a second SNRB in September 2013.  Docs. 7-11 at 110; 7-12 at 5.  Although the second SNRB did not help her pain, Nance reported to Dr. Sims in April 2014 that her back pain improved with anti-inflammatory use.  Doc. 7-11 at 39.  Nance's reported improvement from conservative treatments provides support for the ALJ's decision to discount her subjective pain testimony.  *See Dyer*, 395 F.3d at 1211–12 (relying on claimant's improvement with treatment as inconsistent with his subjective complaints); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

Finally, the ALJ considered evidence that although Nance was repeatedly referred to physical therapy and instructed to exercise more frequently, Nance failed to take advantage of this treatment modality.  Doc. 7-3 at 45.  For example, shortly after Nance's back surgery, Dr. Sammons referred Nance to four weeks of physical therapy.  Doc. 7-14 at 20-21.  To the extent that Nance participated in physical therapy, treatment notes indicate that her prognosis and potential for relief

through rehabilitation was "good." *Id.* at 17-27. Additionally, the medical record indicates that increasing Nance's core strength through physical therapy could improve her pain within four weeks, but Nance attended only three of eight prescribed physical therapy appointments and stopped physical therapy after 1.5 weeks. *Id.* Among other things, the regulations specifically authorize the ALJ to consider the effectiveness of a mode of treatment and the measures taken by the claimant to relieve her symptoms. 20 C.F.R. § 404.1529(c)(3). Thus, the ALJ adequately explained his decision to discredit Nance's subjective complaints of pain, and substantial evidence supports the decision.

It is clear from the record that Nance repeatedly reported significant amounts of pain, particularly prior to her back surgery in November 2014. She obviously has been dealing with a significant and undoubtedly unpleasant issue for years. Still, credibility determinations are the province of the ALJ. *Wilson v. Heckler*, 734 F.2d 5513, 517 (11th Cir. 1984). Here, the "ALJ made a reasonable decision to reject [Nance's] subjective testimony, articulating, in detail, the contrary evidence as his reason[] for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). Thus, in light of the record and the substantial deference owed to the Commissioner's decision, *Dyer*, 395 F.3d at 1212, the court affirms the ALJ's ruling discounting Nance's subjective accounts of pain.

B.     <u>Whether the ALJ Erred by Giving Little Weight to Dr. Sims'
Opinions</u>

Nance also argues that the ALJ failed to properly weigh the opinions of her
treating physician, Dr. Anthony Sims. Doc. 12 at 26-31. Specifically, Nance
contends that the ALJ should have given more weight to opinions contained in Dr.
Sims' statement dated April 29, 2014, a physician's certification dated May 19,
2014, and an opinion letter dated March 4, 2015. *See* doc. 12 at 26-28; *see also*
doc. 7-3 at 46-47. In the April 29, 2014 statement, Dr. Sims opines that Nance is
restricted from performing any of her occupational duties, including walking,
lifting, bending, and moving, and that Nance cannot sit for more than one hour or
stand for more than thirty minutes. Doc. 7-11 at 63. In the May 19, 2014
certification, Dr. Sims opines that Nance cannot engage in any substantial gainful
activity due to her fibromyalgia. *Id.* at 56. Then, in his March 4, 2015 letter, Dr.
Sims opines that Nance's November 7, 2014 back surgery "is considered a failed
lumbar intervertebral disc repair" and that he did not "feel [Nance] could be
gainfully employed partially due to her physical condition and the mental demands
of a work situation." Doc. 7-14 at 34.

The ALJ considered those opinions, but gave them little weight. Doc. 7-3 at
46-47. Nance attacks this decision, arguing that the ALJ erred by principally
relying on a consultative, non-examining physician to reject Dr. Sims' opinions.
Nance is correct that generally, "'opinions of non-examining, reviewing physicians

. . . when contrary to those of examining physicians are entitled to little weight, and standing along do not constitute substantial evidence.'" Doc. 12 at 29 (quoting *Lamb*, 847 F.2d at 703). Here, however, an examination of the entirety of the ALJ's decision belies Nance's assertion and reveals that the ALJ had "good cause" for discounting Dr. Sims' opinions.[2]

As an initial matter, and as noted by the ALJ, Dr. Sims' opinions that Nance is basically fully disabled and is restricted from performing any occupational duties are not medical opinions, but are instead legal issues reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coheley v. Soc. Sec. Admin.*, 707 Fed. Appx. 656, 659 (11th Cir. 2017); *Hutchison v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that an opinion regarding whether a claimant "could hold a job is a vocational opinion, not a medical one" and is a "question reserved to the ALJ"); *see also* doc. 7-3 at 46-47. As such, those opinions are not entitled to any weight, *see* 20 C.F.R. § 404.1527(d)(3), and the ALJ did not err by assigning them little weight.

---

[2] The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). The ALJ must clearly articulate the reasons for not giving substantial or considerable weight to a treating physician's opinions. *Id.*

Second, with respect to the opinion letter submitted by Dr. Sims in March 2015 stating that the surgery was a failed surgery, the medical record before the ALJ indicated that Dr. Sims last saw Nance prior to the surgery. Doc. 7-3 at 46.[3] Thus, Dr. Sims' non-contemporaneous assessment did not reflect Nance's current medical prognosis, *id.* at 44, 46, and was not entitled to significant weight. Moreover, when weighing Dr. Sims' opinion regarding Nance's back surgery, the ALJ appropriately considered that Dr. Sims is a general practitioner and not a specialist. *See* 20 C.F.R. § 404.1527(c)(5); *see also* doc. 7-3 at 46.

Third, the ALJ also properly considered that Dr. Sims' opinions were not consistent with his own treatment notes. For example, although Dr. Sims opined that Nance should be restricted from all occupational duties, Dr. Sims' treatment notes reflect that Nance described her back pain as moderate and reported that her back pain improved with anti-inflammatory use. Docs. 7-11 at 39; 7-14 at 9, 75, 79. His notes also reflect that Nance typically had a normal range of motion and normal strength upon physical examination, that he recommended that Nance exercise regularly, and that Nance's physical condition was generally "normal." Docs. 7-10 61-61; 7-11 at 37-38; 40-41, 46-47, 49, 81, 85-86, 88, 90; 7-14 at 7, 10-

---

[3] The court recognizes that on appeal, Nance submitted a record of examinations conducted by Dr. Sims in February and April 2015. Doc. 7-14 at 77-82. However, notes from those examinations reflect that Nance reported that her back pain improved with anti-inflammatory use. *Id.* Moreover, among other things, Dr. Sims' recommended that Nance engage in "[r]egular, low-impact exercises three times a week." *Id.* at 77. In short, Dr. Sims contemporaneous observations of Nance, which were not before the ALJ, do not cast doubt on the ALJ's conclusion that the evidence did not support Dr. Sims' opinion.

11, 77, 82. These entries by Dr. Sims undermine his subsequent assessment of Nance as being incapable of doing any work. *See* 20 C.F.R. § 404.1527(c)(3), (c)(4); *Phillips*, 357 F.3d at 1241 (explaining that good cause to discount a treating physician's opinion is shown when that "opinion was . . . inconsistent with the doctor's own medical records"); *see also* doc. 7-3 at 46-47.

In addition, as noted by the ALJ, Nance's objective medical records did not support the extent of the physical limitations articulated by Dr. Sims. *See* doc. 7-3 at 46-47. For example, although Nance reported that her back pain increased after her surgery, doc. 7-14 at 39, imaging following her surgery reflects that, among other things, her spine was normally aligned and that the surgery appeared successful, *id.* at 50. Indeed, Nance's back pain responded to conservative treatment after her back surgery, *id.* at 75, 79, and the physical therapy notes suggest that Nance would respond quickly to rehabilitation, *id.* at 20. Moreover, notes in her medical records typically describe Nance as having normal range of motion and strength upon examination. Docs. 7-10 at 53, 61; 7-11 at 10, 16; 7-12 at 15, 39. Additionally, with respect to Nance's osteoarthritis, that condition was described, by the treating orthopedist, as "very minimal." Doc. 7-11 at 16. In short, the record contains ample evidence that is contrary to Dr. Sims' opinions and provides an adequate basis for the ALJ to find good cause to give Dr. Sims' opinions less weight. *See Phillips*, 357 F.3d at 1241.

The court is tasked solely with assessing whether the ALJ applied correct legal standards and reached a decision that was both "reasonable and supported by substantial evidence." *Martin*, 894 F.2d at 1529. In that respect, the court may not second guess the ALJ's findings or substitute its judgment for that of the Commissioner. *Id.* Here, the record indicates that the ALJ had good cause to discount Dr. Sims' opinion and that substantial evidence supports his decision. Accordingly, the ALJ did not err in according little weight to Dr. Sims' opinion.

C.    Whether Nance's Impairments Medically Meet or Exceed Impairment Listing 1.04A

Nance disagrees with the ALJ's finding that Nance's impairments, considered singly or in combination, do not meet the criteria of Listing 1.04, which deals with disorders of the spine. Doc. 7-3 at 39.[4] Nance contends that her medical records and testimony support a contrary finding in her favor. Doc. 12 at

---

[4] Listing 1.04 involves "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

32-44. The issue before the court, however, is whether substantial evidence supports the ALJ's finding, not whether evidence may support a contrary finding. *See Martin*, 894 F. 2d at 1529 (citations omitted). Unfortunately for Nance, the record supports the ALJ's decision that her impairments do not meet or medically equal Listing 1.04A.

For Nance's back impairment to meet Listing 1.04A, the impairment "must meet *all* of the specified medical criteria [for the listing]. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original) (citation omitted). Further, for Nance to show that her "unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.* at 531 (emphasis in original) (citation omitted). Finally, a qualifying impairment "must have lasted or be expected to last for a continuous period of twelve months." *Wilkinson ex rel. Wilkinson*, 847 F.2d at 663. Thus, the physical findings used to establish that the claimed impairment meets or medically equals a listing must persist "over a period of time . . . established by a record of ongoing management and evaluation." 20 C.F.R. pt. 404, subpt. P. app. 1, § 1.00D.

Turning to the specifics here, the ALJ concluded that Nance's back impairment did not meet all of the objective criteria of Listing 1.04A, noting that the medical records show that Nance never presented at any exam with a "loss of motor strength, muscle atrophy, loss of sensation, [and] loss of reflex." Doc. 7-3 at 39-40. This conclusion is borne out by even a cursory review of the medical evidence. As discussed above, Nance's medical records frequently reflect that she presented with normal reflexes and sensation and with normal motor strength. Docs. 7-3 at 44; 7-10 at 53, 61; 7-11 at 37, 40, 49, 81, 85, 90; 7-14 at 7, 10. Moreover, as the Commissioner points out, while Nance sometimes failed straight leg tests in her right leg, the medical records do not indicate if that test was administered both sitting and supine as the regulations require. *See* docs. 7-9 at 79; 7-10 at 6, 10, 19, 23. Finally, to the extent that Nance presented with some deficits in the listed categories, i.e., sensory and reflex loss, or loss of muscle strength, the medical record does not reflect that these symptoms persisted over time. Indeed, as noted repeatedly above, Nance typically presented as generally normal, aside from her reports of pain and some limits on her range of motion, and the record also reflects that these ailments responded to treatment. Thus, Nance's medical records provide substantial evidence to support the ALJ's determination that Nance's back impairment does not meet or medically equal Listing 1.04A.

In addition, the ALJ followed the correct legal standards in determining whether Nance's impairments satisfy any of the listings. In accordance with SSR 02-1p, the ALJ considered whether the cumulative effect of Nance's obesity, in combination with her back impairment, would medically equal one of the listings. Doc. 7-3 at 40. While the ALJ recognized that Nance's obesity complicates her back impairment, he correctly noted that the obesity did not limit her ability to perform work functions prior to her alleged onset date and that Nance "does not have any symptoms of spinal or neurogenic claudication" and is able to ambulate without assistance. *Id.*

Nance's argument boils down to regurgitating the medical record and asking this court to substitute its judgment for that of the ALJ – which the court cannot do. Section 1383(c) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin*, 894 F.2d at 1529. And, the court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Id.* The ALJ need not have reached the correct decision, only a reasonable one supported by substantial evidence. For the reasons described above, the court concludes that the ALJ correctly applied the law, and substantial evidence supported his conclusion that Nance failed to show that her medical impairments met or exceeded Listing 1.04A. Accordingly, this portion of the ALJ's opinion is due to be affirmed.

D.  Whether Substantial Evidence Supports the RFC Determination and the ALJ's Finding that Nance Could Perform Other Work in the National Economy

Nance argues that the ALJ's determination of her RFC was conclusory and, although it summarized the medical evidence, lacked a discernable rationale as required by Social Security Ruling 96-8p.  The court disagrees.  "A claimant's [RFC] is a matter reserved for the ALJ's determination . . . ."  *Beegle v. Soc. Sec. Admin. Comm'r*, 482 Fed. Appx. 483, 486 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(2)).  In making this determination, the ALJ is fully qualified to evaluate the medical evidence on his own, and he is not required to rely on medical opinion evidence regarding a claimant's capabilities.  *See, e.g.*, *Green v. Soc. Sec. Admin.*, 223 Fed. Appx. 915, 923 (11th Cir. 2007) (explaining that the ALJ is free to evaluate physician's opinions regarding the claimant's capabilities "in light of the other evidence presented and [noting that] the ultimate determination of disability is reserved for the ALJ") (citations omitted).  Moreover, as the Eleventh Circuit has explained, "[t]he ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion from an examining medical source about [the] Plaintiff's functional capacity."  *Id.* at 923.

Here, as Nance admits, the ALJ thoroughly summarized the information in the medical record as well as the supporting opinion testimony, noting the weight afforded to various opinion evidence, and articulating the reasons behind those

credibility decisions. *See* doc. 7-3 at 34-50. Among other things, the ALJ noted that Nance's condition appeared to improve, even with conservative treatment, that her overall health was typically reported as "good," that Nance's reports of pain and discomfort were generally moderate, and that she generally was assessed as having a normal gait strength and only mild limitations, if any, in terms of her strength and range of motion. *Id.* at 42–48. As noted by the ALJ, the medical record also shows that imaging after Nance's back surgery revealed that her spine was normally aligned and that the surgical result appeared stable. *Id.* at 44; *see also* doc. 7-14 at 50. Indeed, after her surgery, Nance was referred to physical therapy with a "good" prognosis. Doc. 7-14 at 20. Thus, objective medical evidence supports the ALJ's determination that Nance could perform less than a full range of light work.

Even so, the ALJ's determination that Nance could "occasionally climb ramps or stairs, kneel or crawl, [and] could frequently stoop or crouch" is troubling. *See* doc. 7-3 at 42. The ALJ failed to fully articulate the basis for these exertional limitations. *See id.* While as discussed above, substantial evidence supports the overall determination that Nance's symptoms were not as severe as she indicated, the record also reflects that Nance continues to undergo treatment for a chronic back condition, and there is no formal evaluation of Nance's ability to climb stairs, kneel, crawl, stoop, and crouch. Thus, the ALJ erred by finding that

Nance could occasionally climb stairs, kneel, and crawl, and frequently stoop and crouch. *See Thomason v. Barnhart*, 344 F. Supp. 2d 1326, 1330 (N.D. Ala. 2004) (holding that an ALJ's decision was not based on substantial evidence when, among other things, there was an absence of evidence formally evaluating the claimant's work capabilities).

However, as pointed out by the Commissioner, the doctrine of harmless error applies to Social Security appeals. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). And, the court is mindful of the limited scope of its review, e.g., that it reviews the ALJ's decision as a whole and need only determine that the decision is "'reasonable and supported by substantial evidence.'" *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Here, the ALJ specifically articulated, in the alternative, that if Nance's RFC was reduced to the sedentary level, with the same limitations as previously provided, she would still have the capacity to perform over 40,000 jobs in the national economy. Doc. 7-3 at 49. This number of jobs is significant enough to defeat a finding of disability. *See Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding that 23,800 jobs in the national economy was sufficient to support a finding that the claimant was not disabled). Nance does not argue that this alternative finding was unsupported by substantial evidence, *see* doc. 12, and, in such an instance, remand would constitute a "wasteful corrective exercise" because no further findings are

required to sustain the ALJ's decision based on the entire record. *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981).

It is evident that Nance believes the evidence supports a contrary finding and that she disagrees with the ALJ's ruling on the merits. However, even if the evidence preponderates against the Commissioner's finding, the court must still affirm so long as the ALJ correctly applied the law and his decision was supported by substantial evidence. *Martin*, 894 F.2d at 1529. Although the ALJ should have more explicitly articulated the link between the medical evidence and his RFC determination, "he did consider all of the evidence and found that it did not support the level of disability [Nance] claimed," *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007), and Nance fails to point to anything that the ALJ overlooked or failed to address.

For the reasons explained above, the court finds that substantial evidence supports the ALJ's overall decision that Nance is not disabled.

E.    Whether the Appeals Council Erred by Failing to Review New Relevant Evidence

Finally, Nance argues that the Appeals Council erred by failing to review evidence she submitted on appeal. Doc. 12 at 56-64. In general, a claimant may present new evidence in support of her application at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). "The Appeals Council must

consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (quoting 20 C.F.R. § 404.970(b) (effective through January 16, 2017)).[5] "New evidence is chronologically relevant if it 'relates to the period on or before the date of the ALJ's hearing decision.'" *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (quoting 20 C.F.R. § 404.970(b)).

First, the Appeals Council did not consider records from Midway Medical Clinic, LLC and from Henagar Family Medicine that Nance submitted on appeal because the records are dated after the ALJ rendered his decision and, as such, are not chronologically relevant. *See* doc. 7-3 at 3, 9-23 (records dated from August 27, 2015 through February 12, 2016, which is after the ALJ's August 18, 2015 decision).[6] Moreover, a review of the records reveals that they do not relate to Nance's condition at the time of or before the ALJ's decision. Instead, the records consist of notes describing Nance's symptoms and treatment beginning on August

_____

[5] 20 C.F.R. § 404.970 was amended effective January 17, 2017. *See* 81 FR 90987-01. The court relies on the prior version of 20 C.F.R. § 404.970 that was in effect on January 9, 2017 when the AC denied review in Nance's case.

[6] In its decision denying review, the Appeals Council states that it "looked at office treatment records from Midway Medical dated August 27, 2015 through February 12, 2016," but does not mention records from Henagar Family Medicine. Doc. 7-3 at 3. Nance suggests as a result that the Appeals Council did not look at records from Henagar. Doc. 12 at 57. Nance's argument on this point is unavailing. The new medical records at issue consist of records from Midway Medical dated December 8, 2015 through February 12, 2016, doc. 7-3 at 9-16, and records from Henagar dated August 27, 2015 through December 1, 2015, *id.* at 7-23. Thus, based on the dates cited, the Appeals Council did review the records from Henagar.

27, 2015.  *See id.*  As a result, the Appeals Council properly declined to consider the records from Midway Medical Clinic and Henagar Family Clinic on the grounds that they are not chronologically relevant.  *See Hargress*, 883 F.3d at 1309-10 (finding that medical records that post-dated the ALJ's decision were not chronologically relevant when "nothing in the[] new medical records indicates that the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue").

Next, the Appeals Council considered new records that Nance submitted on appeal from Huntsville Hospital, but determined that the records did not provide a basis to change the ALJ's decision.  Doc. 7-3 at 3, 6.[7]  The Huntsville Hospital records relate to Nance's March 2015 treatment for chest pain and mitral valve prolapse.  Doc. 7-14 at 57-67; *see also* doc. 12 at 56-57.  However, the ALJ considered evidence that Nance had mitral valve prolapse, and he found that the condition was a non-severe impairment.  Doc. 7-3 at 37-38; *see also* doc. 7-11 at 92.  Also, as the ALJ noted, Nance reported to a physician on April 2, 2015 that she did not have chest pain, and no abnormalities were noted about her

---

[7] The Appeals Council also considered records that Nance submitted from Dr. Sims, docs. 7-3 at 7; 7-14 at 74-83, but Nance does not argue that those records provide a basis to change the ALJ's decision, *see* doc. 12 at 56-64.  Those records consist of treatment notes dated February 13, 2015 through May 5, 2015.  Doc. 7-14 at 74-83.  With respect to the notes relating to Nance's back pain, the new records from Dr. Sims reflect that her pain improved with anti-inflammatory use and that Dr. Sims recommended over-the-counter medications to treat her pain.  *Id.* at 75, 77.  Thus, the new records provide further support for the ALJ's decision, and not a basis to change the decision.

cardiovascular system upon exam that day. Docs. 7-3 at 38; 7-14 at 43-44. Thus, the Huntsville Hospital Records that Nance submitted to the Appeals Council do not show that the ALJ's decision is contrary to the weight of the evidence, and the Appeals Council properly denied review.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Nance is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 31st day of August, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE